1    E. K. Wade (Pro Se)
2    300 Bel Air Drive, #99
     Vacaville, CA  95687
3    (925) 323-1578

**FILED**

MAY 0 2 2013

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
              DEPUTY CLERK

4

5    **Attorney for Plaintiff**

6

7

8                    **UNITED STATES DISTRICT COURT**

9               **EASTERN DISTRICT OF CALIFORNIA**

10                     **SACRAMENTO DIVISION**

11   **E. K. Wade**                          **Case No.** 2 1 3 - CV - 0 8 6 1 MCE CKD PS

12                          **Plaintiff,**    <u>**COMPLAINT FOR MONEY DAMAGES**</u>
                                              <u>**UNDER BIVENS:**</u>
13   **vs.**
                                              **(Conspiracy to Interfere/Deprive**
14   <u>**REPRESENATIVES:**</u> **JEFF MILLER (R-**   **Plaintiff's Liberty Interest to Equal**
15   **FL), GARY ACKERMAN** (D-NY), **SANDY**    **Protection** (through Age discrimination)
     **ADAMS** (R-FL), **ROBERT ADHERHOLT**    **and Neglect to Prevent Conspiracy**
16   (R-AL), **TODD AKIN** (R-MO), **RODNEY**    **against** *Miller et al* (Bivens, 42 U.S.C. §§
     **ALEXANDER** (R-LA), **JASON ALTMIRE**    1985(3), and 1986).
17   (D-PA), **MARK AMODEI** (R-NV),
     **ROBERT ANDREWS**(D-NJ), **STEVE**        U.S. Const. amend. V;
18   **AUSTRIA** (R-OH), **JOE BACA** (D-CA),    42 U.S.C. § 1985(3);
     **MICHELLE BACHMANN** (R-MN),              Halberstam v. Welch, 705 F.2d 472, 477
19                                             D.C. Cir. 1983); (Conspiracy)
     **SPENCER BACHUS** (R-AL), **TAMMY**        42 U.S.C. § 1986;
20   **BALDWIN** (D-WI), **LOU BARLETTA** (R-    Haynesworth v. D.H. Stevens Co., 645
     PA), **JOHN BARROW** (D-GA), **ROSCOE**     A.2d 1095, 1098 (D.C. Cir. 1994);
21   **BARTLETT** (R-MD), **JOE BARTON** (R-     (Negligence)
     TX), **CHARLES BASS** (R-NH), **XAVIER**    38 C.F.R. § 18.511(a-b)(1-2)(c);
22   **BACERRA** (D-CA), **DAN BENISHEK** (R-    38 C.F.R. § 18.503(e);
     MI), **RICK BERG** (R-ND), **SHELLEY**      Fed.R.Evid. § 901(a);
23   **BERKLEY** (D-NV), **HOWARD BERMAN**       Fed.R.Evid. § 901(b)(7)(A-B); and
24   (D-CA), **JUDY BIGGERT** (R-IL), **BRIAN**   Fed.R.Evid. § 902(5)
     **BILBRAY** (R-CA), **GUS BILIRAKIS** (R-   Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009);
25   FL), **SANFORD BISHOP** (D-GA),            Bivens v. Six Unknown Narcotics Agents,
     **TIMOTHY BISHOP** (D-NY), **ROB BISHOP**   403 U.S. 388 (1971);
26   (R-UT), **DIANE BLACK** (R-TN), **MARSHA**   Davis v. Passman, 99 S.Ct. 2264 (1979);
                                              Hutchinson v. Proxmire, 99 S.Ct. 2675
27   **BLACKBURN** (R-TN), **EARL**              (1979);
     **BLUMENAUER** (D-OR), **JO BONNER** (R-   Quey v. U.S., 222 F. 766, 771-772 (9th Cir.
28   AL), **MARY BONO MACK** (R-CA), **DAN**     1915);
                                              Harlow v. Fitzgerald, 102 S.Ct. 2727
                                              (1982);
                                              U.S. v. Rodriguez-Velez, 597 F.3d 32
                                              (2010); and

E. K. Wade v. Miller et al: Complaint for Damages - 1

1  **BOREN** (D-OK), **LEONARD BOSWELL**
2  (D-IA), **CHARLES BOUSTANY** (R-LA),
   **ROBERT BRADY** (D-PA), **KEVIN BRADY**
3  (R-TX), **BRUCE BRALEY** (D-IA), **MO**
   **BROOKS** (R-AL), **PAUL BROUN** (R-GA),
4  **CORRINE BROWN** (D-FL), **VERN**
5  **BUCHANAN** (R-FL), **LARRY BUCSHON**
   (R-IN), **ANNA MARIE BUERKLE** (R-NY),
6  **MICHAEL BURGESS** (R-TX), **DAN**
   **BURTON** (R-IN), **GEORGE**
7  **BUTTERFIELD** (D-NC), **KEN CALVERT**
8  (R-CA), **DAVID CAMP** (R-MI),
   **FRANCISCO CANSECO** (R-TX), **ERIC**
9  **CANTOR** (R-VA), **SHELLEY CAPITO** (R-
   WV), **LOIS CAPPS** (D-CA), **MICHAEL**
10 **CAPUANO** (D-MA), **RUSS CARNAHAN**
11 (D-MO), **JOHN CARNEY** (D-DE), **ANDRE**
   **CARSON** (D-IN), **JOHN CARTER** (R-TX),
12 **BILL CASSIDY** (R-LA), **KATHY CASTOR**
13 (D-FL), **STEVEN CHABOT** (R-OH),
   **JASON CHAFFETZ** (R-UT), **BEN**
14 **CHANDLER** (D-KY), **JUDY CHU** (D-CA),
   **DAVID CICILLINE** (D-RI), **HANSEN**
15 **CLARKE** (D-MI), **YVETTE CLARKE** (D-
16 NY), **WILLIAM CLAY** (D-MO), **EMANUEL**
   **CLEAVER** (D-MO), **JAMES CLYBURN**
17 (D-SC), **HOWARD COBLE** (R-NC), **MIKE**
   **COFFMAN** (R-CO), **STEVE COHEN** (D-
18 TN), **TOM COLE** (R-OK), **MICHAEL**
19 **CONAWAY** (R-TX), **GERALD**
   **CONNALLY** (D-VA), **JOHN CONYERS**
20 (D-MI), **JIM COOPER** (D-TN), **JIM**
   **COSTA** (D-CA), **JERRY COSTELLO** (D-
21 IL), **JOE COURTNEY** (D-CT), **CHIP**
22 **CRAVAACK** (R-MN), **RICK CRAWFORD**
   (R-AR), **ANDER CRENSHAW** (R-FL),
23 **MARK CRITZ** (D-PA), **JOSEPH**
24 **CROWLEY** (D-NY), **HENRY CUELLAR**
   (D-TX), **JOHN CULBERSON** (R-TX),
25 **ELIJAH CUMMINGS** (D-MA), **SUSAN**
   **DAVIS** (D-CA), **DANNY DAVIS** (D-IL),
26 **GEOFF DAVIS** (R-KY), **PETER DeFAZIO**
27 (D-OR), **DIANA DeGETTE,** (D-CO), **OSA**
   **DeLAURO,** (D-CT), **JEFF DENHAM,** (R-
28 CA), **CHARLES DENT,** (R-PA), , **SCOTT**
   <u>**DesJARLAIS,**</u> (R-TN), **TED DEUTCH,** (D-

Williams v. Long, 585 F.Supp.2d 679
(2008).

**DEMAND JURY TRIAL**

E. K. Wade v. Miller et al: Complaint for Damages – 2

1  FL), **MARIO DIAZ-BALART**, (R-FL),
2  **NORMAN DICKS**, (D-WA), **JOHN DINGELL**, (D-MI), **LLOYD DOGGETT**,
3  (D-TX), **BOB DOLD**, (R-IL), **JOE DONNELLY**, (D-IN), **MICHAEL DOYLE**,
4  (D-PA), **DAVID DRELER**, (R-CA), **SEAN DUFFY**, (R-WI), **JEFF DUNCAN**, (R-SC),
5  **JOHN DUNCAN**, (R-TN), **DONNA EDWARDS**, (D-MD), **KEITH ELLISON**,
6  (D-MN), **RENEE ELMERS**, (R-NC), **JO ANN EMERSON**, (R-MO), **ELIOT ENGEL**,
7  (D-NY), **ANNA ESHOO**, (D-CA), **BLAKE FARENTHOLD**, (R-TX), **SAM FARR**, (D-
8  CA), **CHAKA FATTAH**, (D-PA), **STEPHEN FINCHER**, (R-TN), **MICHAEL**
9  **FITZPATRICK**, (R-PA), **CHUCK FLEISCHMANN**, (R-TN), **JOHN**
10 **FLEMING**, (R-LA), **BILL FLORES**, (R-TX), **RANDY FORBES**, (R-VA), **JEFFREY**
11 **FORTENBERRY**, (R-NE), **VIRGINIA FOXX**, (R-NC), **BARNEY FRANK**, (D-
12 MA), **TRENT FRANKS**, (R-AZ), **RODNEY FRELINGHUYSEN**, (R-NJ), **MARCIA**
13 **FUDGE**, (D-OH), **ELTON GALLEGLY**, (R-CA), **JOHN GARAMENDI**, (D-CA), **CORY**
14 **GARDNER**, (R-CO), **JIM GERLACH**, (R-PA), **BOB GIBBS**, (R-OH), **CHRIS**
15 **GIBSON**, (R-NY), **JOHN GINGREY**, (R-GA), **LOUIS GOHMERT**, (R-TX),
16 **CHARLES GONZALEZ**, (D-TX), **ROBERT GOODLATTE**, (R-VA), **PAUL**
17 **GOSAR**, (R-AZ), **TREY GOWDY**, (R-SC), **KAY GRANGER**, (R-TX), **TOM GRAVES**,
18 (R-GA), **SAMUEL GRAVES**, (R-MO), **AL GREEN**, (D-TX), **RAYMOND GREEN**, (D-
19 TX), **TIM GRIFFIN**, (R-AR), **MORGAN GRIFFITH**, (R-VA), **RAUL GRIJALVA**, (D-
20 AZ), **MICHAEL GRIMM**, (R-NY), **FRANK GUINTA**, (R-NH), **BRETT GUTHRIE**, (R-
21 KY), **LUIS GUTIERREZ**, (D-IL), **JANICE HAHN**, (D-CA), **RALPH HALL**, (R-TX),
22 **COLLEEN HANABUSA**, (D-HI), **RICHARD HANNA**, (R-NY), **GREGG**
23 **HARPER**, (R-MS), **ANDY HARRIS**, (R-MD), **VICKY HARTZLER**, (R-MO),
24 **ALCEE HASTINGS**, (D-FL), **DOC**

HASTINGS, (R-WA), **NAN HAYWORTH**,
(R-NY), **JOE HECK**, (R-NV), **MARTIN
HEINRICH**, (D-NM), **JEB HENSARLING**,
(R-TX), **WALTER HERGER**, (R-CA),
**JAIME HERRERA BEUTLER**, (R-WA),
**BRIAN HIGGINS**, (D-NY), **JAMES
HIMES**, (D-CT), **MAURICE HINCHEY**, (D-
NY), **RUBEN HINOJOSA**, (D-TX), **MAZIE
HIRONO**, (D-HI), **KATHLEEN HOCHUL**,
(D-NY), **TIM HOLDEN**, (D-PA), **RUSH
HOLT**, (D-NJ), **MICHAEL HONDA**, (D-
CA), **TIM HUELSKAMP**, (R-KS), **BILL
HUIZENGA**, (R-MI), **RANDY HULTGREN**,
(R-IL), **DUNCAN HUNTER**, (R-CA),
**ROBERT HURT**, (R-VA), **JAY INSLEE**,
(D-WA), **STEVE ISRAEL**, (D-NY),
**DARRELL ISSA**, (R-CA), **JESSE
JACKSON**, (D-IL), **SHEILA JACKSON-
LEE**, (D-TX), **LYNN JENKINS**, (R-KS),
**SAMUEL JOHNSON**, (R-TX), **HENRY
JOHNSON**, (D-GA), **TIMOTHY
JOHNSON**, (R-IL), **BILL JOHNSON**, (R-
OH), **EDDIE JOHNSON**, (D-TX), **JIM
JORDAN**, (R-OH), **MARCY KAPTUR**, (D-
OH), **WILLIAM KEATING**, (D-MA), **MIKE
KELLY**, (R-PA), **DALE KILDEE**, (D-MI),
**RONALD KIND**, (D-WI), **STEVE KING**,
(R-IA), **PETER KING**, (R-NY), **JACK
KINGSTON**, (R-GA), **ADAM KINZINGER**,
(R-IL), **LARRY KISSELL**, (D-NC), **JOHN
KLINE**, (R-MN), **DENNIS KUCINICH**, (D-
OH), **RAUL LABRADOR**, (R-ID), **DOUG
LAMBORN**, (R-CO), **LEONARD LANCE**,
(R-NJ), **JEFF LANDRY**, (R-LA), **JAMES
LANGEVIN**, (D-RI), **JAMES LANKFORD**,
(R-OK), **RICK LARSEN**, (D-WA), **JOHN
LARSEN**, (D-CT), **THOMAS LATHAM**,
(R-IA), **STEVEN LaTOURETTE**, (R-OH),
**ROBERT LATTA**, (R-OH), **BARBARA
LEE**, (D-CA), **SANDER LEVIN**, (D-MI),
**JERRY LEWIS**, (R-CA), **DANIEL
LIPINSKI** (D-IL), **FRANK LoBIONDO**, (R-
NJ), **DAVID LOEBSACK**, (D-IA), **ZOE
LOFGREN**, (D-CA), **BILLY LONG**, (R-
MO), **NITA LOWEY**, (D-NY), **FRANK
LUCAS**, (R-OK), **BLAINE**

E. K. Wade v. Miller et al: Complaint for Damages - 4

1   **LUETKEMEYER**, (R-MO), **BEN LUJAN**,
2   (D-NM), **CYNTHIA LUMMIS**, (R-WY),
    **DANIEL LUNGREN**, (R-CA), **STEPHEN**
3   **LYNCH**, (D-MA), **CONNIE MACK**, (R-FL),
    **CAROLYN MALONEY**, (D-NY), **DONALD**
4   **MANZULLO**, (R-IL), **KENNY**
5   **MARCHANT**, (R-TX), **THOMAS MARINO**,
    (R-PA), **EDWARD MARKEY**, (D-MA),
6   **DORIS MATSUI**, (D-CA), **KEVIN**
    **McCARTHY**, (R-CA), **CAROLYN**
7   **McCARTHY**, (D-NY), **MICHAEL**
8   **McCAUL**, (R-TX), **TOM McCLINTOCK**,
    (R-CA), **BETTY McCOLLUM**, (D-MN),
9   **THADDEUS McCOTTER**, (R-MI), **JAMES**
    **McDERMOTT**, (D-WA), **JAMES**
10  **McGOVERN**, (D-MA), **PATRICK**
11  **McHENRY**, (R-NC), **MIKE McINTYRE**,
    (D-NC), **HOWARD McKEON**, (R-CA),
12  **DAVID McKINLEY**, (R-WV), **CATHY**
13  **McMORRIS RODGERS**, (R-WA), **JERRY**
    **McNERNEY**, (D-CA), **PATRICK**
14  **MEEHAN**, (R-PA), **GREGORY MEEKS**,
15  (D-NY), **JOHN MICA**, (R-FL), **MICHAEL**
    **MICHAUD**, (D-ME), **GARY MILLER**, (R-
16  CA), **GEORGE MILLER**, (D-CA),
    **CANDICE MILLER**, (R-MI), **BRADLEY**
17  **MILLER**, (D-NC), **GWEN MOORE**, (D-
18  WI), **JAMES MORAN**, (D-VA), **MICK**
    **MULVANEY**, (R-SC), **TIM MURPHY**, (R-
19  PA), **CHRISTOPHER MURPHY**, (D-CT),
20  **SUE MYRICK**, (R-NC), **JERROLD**
    **NADLER**, (D-NY), **GRACE**
21  **NAPOLITANO**, (D-CA), **RICHARD NEAL**,
    (D-MA), **RANDY NEUGEBAUER**, (R-TX),
22  **KRISTI NOEM**, (R-SD), **RICHARD**
    **NUGENT**, (R-FL), **DEVINE NUNES**, (R-
23  CA), **ALAN NUNNELEE**, (R-MS), **PETE**
24  **OLSON**, (R-TX), **JOHN OLVER**, (D-MA),
    **WILLIAM OWENS** , (D-NY), **STEVEN**
25  **PALAZZO**, (R-MS), **FRANK PALLONE**,
    (D-NJ), **WILLIAM PASCRELL**, (D-NJ),
26  **EDWARD PASTOR**, (D-AZ), **ERIK**
    **PAULSEN**, (R-MN), **DONALD PAYNE**,
27  (D-NJ), **STEVAN PEARCE**, (R-NM),
28  **NANCY PELOSI**, (D-CA), **MIKE PENCE**,
    (R-IN), **ED PERLMUTTER**, (D-CO),

**GARY PETERS**, (D-MI), **COLLIN PETERSON**, (D-MN), **THOMAS PETRI**, (R-WI), **CHELLIE PINGREE**, (D-ME), **JOSEPH PITTS**, (R-PA), **TODD PLATTS**, (R-PA), **TED POE**, (R-TX), **JARED POLIS**, (D-CO), **MIKE POMPEO**, (R-KS), **BILL POSEY**, (R-FL), **TOM PRICE**, (R-GA), **DAVID PRICE**, (D-NC), **BEN QUAYLE**, (R-AZ), **MIKE QUIGLEY**, (D-IL), **NICK RAHALL**, (D-WV), **CHARLES RANGEL**, (D-NY), **TOM REED**, (R-NY), **DENNIS REHBERG**, (R-MT), **DAVE REICHERT**, (R-WA), **JIM RENACCI**, (R-OH), **SILVESTRE REYES**, (D-TX), **REID RIBBLE**, (R-WI), **LAURA RICHARDSON**, (D-CA), **CEDRIC RICHMOND**, (D-LA), **SCOTT RIGELL**, (R-VA), **DAVID RIVERA**, (R-FL), **MARTHA ROBY**, (R-AL), **PHIL ROE**, (R-TN), **MICHAEL ROGERS**, (R-MI), **MICHAEL ROGERS**, (R-AL), **HAROLD ROGERS**, (R-KY), **DANA ROHRABACHER**, (R-CA), **TODD ROKITA**, (R-IN), **THOMAS ROONEY**, (R-FL), **PETER ROSKAM**, (R-IL), **ILEANA ROS-LEHTINEN**, (R-FL), **MIKE ROSS**, (D-AR), **DENNIS ROSS**, (R-FL), **STEVEN ROTHMAN**, (D-NJ), **LUCILLE ROYBAL-ALLARD**, (D-CA) **EDWARD ROYCE**, (R-CA), **JON RUNYAN**, (R-NJ), **DUTCH RUPPERSBERGER** (D-MD), **BOBBY RUSH**, (D-IL), **PAUL RYAN**, (R-WI), **TIMOTHY RYAN**, (D-OH), **LORETTA SANCHEZ**, (D-CA), **LINDA SANCHEZ**, (D-CA), **JOHN SARBANES**, (D-MD), **STEVE SCALISE**, (R-LA), **JANICE SCHAKOWSKY**, (D-IL), **ADAM SCHIFF**, (D-CA), **ROBERT SCHILLING**, (R-IL), **JEAN SCHMIDT**, (R-OH), **AARON SCHOCK**, (R-IL), **KURT SCHRADER**, (D-OR), **ALLYSON SCHWARTZ**, (D-PA), **DAVID SCHWEIKERT**, (R-AZ), **TIM SCOTT**, (R-SC), **DAVID SCOTT**, (D-GA), **ROBERT SCOTT**, (D-VA), **AUSTIN SCOTT**, (R-GA), **JAMES SENSENBRENNER**, (R-WI), **JOSE SERRANO**, (D-NY), **PETER SESSIONS**,

(R-TX), **TERRI SEWELL**, (D-LA), **BRAD SHERMAN**, (D-CA), **JOHN SHIMKUS**, (R-IL), **HEATH SHULER**, (D-NC), **WILLIAM SHUSTER**, (R-PA), **MICHAEL SIMPSON**, (R-ID), **ALBIO SIRES**, (D-NJ), **ADRIAN SMITH**, (R-NE), **ADAM SMITH**, (D-WA), **LAMAR SMITH**, (R-TX), **CHRISTOPHER SMITH**, (R-NJ), **STEVE SOUTHERLAND**, (R-FL), **JACKIE SPEIER**, (D-CA), **FORTNEY STARK**, (D-CA), **CLIFFORD STEARNS**, (R-FL), **STEVE STIVERS**, (R-OH), **MARLIN STUTZMAN**, (R-IN), **JOHN SULLIVAN**, (R-OK), **BETTY SUTTON**, (D-OH), **LEE TERRY**, (R-NE), **MICHAEL THOMPSON**, (D-CA), **BENNIE THOMPSON**, (D-MS), **GLENN THOMPSON**, (R-PA), **WILLIAM THORNBERRY**, (R-TX), **PATRICK TIBERI**, (R-OH), **JOHN TIERNEY**, (D-MA), **SCOTT TIPTON**, (R-CO), **PAUL TONKO**, (D-NY), **EDOLPHUS TOWNS**, (D-NY), **NIKI TSONGAS**, (D-MA), **ROBERT TURNER**, (R-NY), **MICHAEL TURNER**, (R-OH), **FREDERICK UPTON**, (R-MI), **CHRISTOPHER VAN HOLLEN**, (D-MD), **NYDIA VELAZQUEZ**, (D-NY), **PETER VISCLOSKY**, D-IN), **TIMOTHY WALBERG**, (R-MI), **GREG WALDEN**, (R-OR), **JOE WALSH**, (R-IL), **TIMOTHY WALZ**, (D-MN), **DEBBIE WASSERMAN SCHULTZ**, (D-FL), **MAXINE WATERS**, (D-CA), **MELVIN WATT**, (D-NC), **HENRY WAXMAN**, (D-CA), **DANIEL WEBSTER**, (R-FL), **PETER WELCH**, (D-VT), **ALLEN WEST**, (R-FL), **LYNN WESTMORELAND**, (R-GA), **EDWARD WHITFIELD**, (R-KY), **ADDISON WILSON**, (R-SC), **ROB WITTMAN**, (R-VA), **FRANK WOLF**, (R-VA), **STEVE WOMACK**, (R-AR), **ROB WOODALL**, (R-GA), **LYNN WOOLSEY**, (D-CA), **JOHN YARMUTH**, (D-KY), **KEVIN YODER**, (R-KS), **TODD YOUNG**, (R-IN), **BILL YOUNG**, (R-FL), and **DONALD YOUNG**, (R-AK)

E. K. Wade v. Miller et al: Complaint for Damages - 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SENATORS: DANIEL AKAKA** (D-HI), **LAMAR ALEXANDER** (R-TN), **KELLY AYOTTE** (R-NH), **JOHN BARRASSO** (R-WY), **MAX BAUCUS** (D-MT), **MARK BEGICH** (D-AK), **MICHAEL BENNET** (D-CO), **JEFF BINGAMAN** (D-NM), **RICHARD BLUMENTHAL** (D-CT), **ROY BLUNT** (R-MO), **JOHN BOOZMAN** (R-AR), **BARBARA BOXER** (D-CA), **SHERROD BROWN** (D-OH), **SCOTT BROWN** (R-MA), **RICHARD BURR** (R-NC), **MARIA CANTWELL** (D-WA), **BEN CARDIN** (D-MD), **THOMAS CARPER** (D-DE), **ROBERT CASEY** (D-PA), **SAXBY CHAMBLISS** (R-GA), **DAN COATS** (R-IN), **TOM COBURN** (R-OK), **THAD COCHRAN** (R-MS), **SUSAN COLLINS** (R-ME), **KENT CONRAD** (D-ND), **CHRIS COONS** (D-DE), **BOB CORKER** (R-TN), **JOHN CORNYN** (R-TX), **MIKE CRAPO** (R-ID), **JIM DeMINT** (R-SC), **DICK DURBIN** (D-IL), **MIKE ENZI** (R-WY), **DIANE FEINSTEIN** (D-CA), **AL FRANKEN** (D-MN), **KIRSTEN GILLIBRAND** (D-NY), **LINDSEY GRAHAM** (R-SC), **CHUCK GRASSLEY** (R-IA), **TOM HARKIN** (D-IA), **ORRIN HATCH** (R-UT), **DEAN HELLER** (R-NV), **JOHN HOEVEN** (R-ND), **KAY BAILEY HUTCHISON** (R-TX), **JAMES INHOFE** (R-OK), **JOHNNY ISAKSON** (R-GA), **MIKE JOHANNS** (R-NE), **TIM JOHNSON** (D-SD), **RON JOHNSON** (R-WI), **JOHN KERRY** (D-MA), **MARK KIRK** (R-IL), **AMY KLOBUCHAR** (D-MN), **HERB KOHL** (D-WI), **JON KYL** (R-AZ), **MARY LANDRIEU** (D-LA), **FRANK LAUTENBERG** (D-NJ), **PATRICK LEAHY** (D-VT), **MIKE LEE** (R-UT), **CARL LEVIN** (D-MI), **JOSEPH LIEBERMAN** (ID-CT), **DICK LUGAR** (R-IN), **JOE MANCHIN** (D-WV), **CLAIRE McCASKILL** (D-MO), **MITCH McCONNELL** (R-KY), **ROBERT MENENDEZ** (D-NJ), **JEFF MERKLEY** (D-OR), **BARBARA MIKULSKI** (D-MD), **JERRY MORAN** (R-KS), **LISA MURKOWSKI** (R-AK), **PATY MURRAY**

1  D-WA), **BILL NELSON** (D-FL), **BEN**
2  **NELSON** (D-NE), **RAND PAUL** (R-KY),
   **ROB PORTMAN** (R-OH), **MARK PRYOR**
3  (D-AR), **JACK REED** (D-RI), **HARRY**
   **REID** (D-NV), **JAMES RISCH** (R-ID), **PAT**
4  **ROBERTS** (R-KS), **JAY ROCKEFELLER**
5  (D-WV), **MARCO RUBIO** (R-FL), **BERNIE**
   **SANDERS** (ID-VT), **CHARLES**
6  **SCHUMER** (D-NY), **JEANNE SHAHEEN**
   (D-NH), **RICHARD SHELBY** (R-AL),
7  **DEBBIE STABENOW** (D-MI), **JOHN**
8  **TESTER** (D-MT), **JOHN THUNE** (R-SD),
   **PAT TOOMEY** (R-PA), **MARK UDALL** (D-
9  CO), **TOM UDALL** (D-NM), **DAVID**
   **VITTER** (R-LA), **MARK WARNER** (D-VA),
10 **JIM WEBB** (D-VA), **SHELDON**
11 **WHITEHOUSE** (D-RI), **ROGER WICKER**
   (R-MS), and **RON WYDEN** (D-OR);
12
13 In their *Individual* capacities.
14                          **Defendants.**
   **Plaintiff alleges:**
15
16            **PRELIMINARY STATEMENT AND NATURE OF THE CASE**
17   1. This action is brought for violation of Plaintiff's rights under the Fifth Amendment
18      to the U. S. Constitution and Federal laws of the United States. *Bivens v. Six*
19      *Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*
20      Plaintiff alleges Defendants' formed alliance to deprive Plaintiff's rights to be free
21      from age discrimination violated the first clause of 42 U.S.C. § 1985(3), which
22      prohibits conspiracies to deprive, "any person or class of persons of the equal
23      protection of the laws, or of equal privileges and immunities under the laws."
24   2. Plaintiff alleges that Defendants (Representatives and Senators), outside the
25      sphere of legitimate legislative activity, formed an alliance to solicit, persuade,
26      influence, and promote other constituents to enact unlawful legislation "aimed at
27      interfering with rights" that are "protected against private, as well as official,
28

E. K. Wade v. Miller et al: Complaint for Damages - 9

encroachment," a second prerequisite to proving a private conspiracy in violation of 1985(3)'s first clause. Although the right to Fifth Amendment due process is constitutionally protected against private interference, Plaintiff makes clear that a 1985(3) private conspiracy must be "aimed at" that right.

3. Plaintiff alleges that Defendants *Miller et al,* outside the sphere of legitimate legislative activity, formed an alliance to solicit, persuade, influence, and promote the enactment of unlawful legislation that deprived Plaintiff's Fifth Amendment rights in violation of 42 U.S.C. §§ 1985(3).

4. Plaintiff alleges that Defendants' conduct qualifies alongside age discrimination as an "otherwise class-based, invidiously discriminatory animus [underlying] the conspirators' action," as is required under *Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)* And, Defendants' conduct reflects an animus against Plaintiff because of his age; and that the criteria defining that class was invidious.

5. Plaintiff alleges that he was deprived of a Constitutional right by Federal agents, acting under color of Federal law (outside of a legitimate legislative activity) when Defendants knew or should have known of Plaintiff's already established Constitutional rights; and Plaintiff suffered and continues to suffer injury. In support of his complaint for damages, Plaintiff alleges as follows: ***NOTE:*** For purposes of this lawsuit, ALL references to Tabs refer to evidence presently on file in the Second Amended Complaint, dated September 4, 2012; and the Third Amended Complaint of *Wade v. Akaka, 2:12 CV 179,* in U.S. District Court, Southern Division, Corpus Christi, Texas, dated November 21, 2012. The aforementioned case was dismissed, without prejudice, on December 10, 2012

because Plaintiff was unable to timely articulate and demonstrate that the Court had Subject Matter Jurisdiction, Personal Jurisdiction, and state a claim upon which relief could be granted.

## JURISDICTION AND VENUE

6. This court has subject matter jurisdiction over this action involving a federal question because Plaintiff's claims **are not** barred by the Speech or Debate Clause of the U.S. Const. art. 1, § 6, for Defendants' statements **were not** made within **the sphere of legitimate legislative activities**. (*Davis v. Passman, 442 U.S. 228 (1979)*, and *Hutchinson v. Proxmire, 99 S.Ct. 2675 (1979)*)   **28 U.S.C. § 1331**

7. Plaintiff demands a trial by Jury pursuant to *Fed.Rul.Civ.Proc. 38*.

8. Venue is appropriate in this court because Defendants all have minimum contacts in the District of Columbia, pursuant to **D.C. Code Ann. § 13-423(a)(1)**. The District of Columbia **"Long-arm"** statute, Personal Jurisdiction based on Conduct, provides in part: *"A District of Columbia Court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's – 1) transacting any business in the District of Columbia; 2) contracting to supply services in the District of Columbia; 3) causing tortuous injury in the District of Columbia by an act or omission in the District of Columbia; or 4) causing tortuous injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly engages in any other persistent course of conduct... in the District of Columbia."* Under the first provision, "transacting any business in the District of Columbia," certainly Representatives and Senators employed by the U.S. Congress had sufficient

contacts under the District's "Long-arm" statute.  Under the third provision, "causing tortuous injury in the District of Columbia by an act or omission in the District of Columbia," certainly these aforementioned Defendants caused Plaintiff tortuous injury in the District of Columbia by acts of conspiracy.  Therefore, this Court has personal jurisdiction over Defendants because they purposefully and intentionally directed their activities at the District of Columbia, causing foreseeable harm to Plaintiff sufficient that Defendants should have anticipated having to defend their actions in the District of Columbia.  Defendants' purposeful contacts with the District of Columbia include, among other things:

a) Defendants conducted a substantial portion of their co-conspiracy in the District of Columbia.

b) Defendant Rep. Miller stated a plan, in the District of Columbia, to urge and persuade other constituents to adopt legislation, by unlawful means, which deprived Plaintiff's Fifth Amendment rights to due process.

c) Defendant Sen. Murray stated her agreement to work with Defendant Rep. Miller, in the District of Columbia, to urge and persuade other constituents to adopt legislation, by unlawful means, to deprive Plaintiff's Fifth Amendment rights to due process.

d) Defendant Sen. Debbie Stabenow, in the District of Columbia, stated her agreement with Defendant Rep. Miller to urge and persuade other constituents to adopt legislation, by unlawful means, which deprived Plaintiff's Fifth Amendment rights to due process.

E. K. Wade v. Miller et al: Complaint for Damages - 12

e) Defendant Sen. Sherrod Brown, in the District of Columbia, stated her agreement with Defendant Rep. Miller to urge and persuade other constituents to adopt legislation, by unlawful means, which deprived Plaintiff's Fifth Amendment rights to due process.

f) Defendant Sen. Jon Tester stated his agreement with Defendant Rep. Miller to urge and persuade other constituents to adopt legislation, by unlawful means, which deprived Plaintiff's Fifth Amendment rights to due process.

g) Most of the documents pertaining to Defendants' scheme are located in the District of Columbia.

h) All Defendants, and each of them, have an agent, transact his/her affairs, or acts to influence events and cause other effects in the District of Columbia.

## **ARTICLE III STANDING**

9. Plaintiff has Article III standing.  Pursuant to Article III of the United States Constitution, the federal judicial power is restricted to "cases" and "controversies."  ***U.S. Const. Art. III, § 2***.  The Supreme Court has explained that pursuant to Article III, "the irreducible constitutional minimum of standing contains three elements."  *Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)*.  These elements are: "1) an 'injury in fact' that is (a) concrete and particularized and b) actual or imminent; 2) a causal connection between the injury and the conduct complained of; and 3) the likelihood that a favorable decision will redress the injury."  *Croft v. Governor of Texas, 562 F.3d 735, 745 (5th Cir. 2009)* (citing *Lujan, 504 U.S. at 560-61*).  In the first element, statements made by Defendants Miller, Murray, Stabenow, Brown, and Tester, urging other constituents to adopt unlawful legislation, deprived Plaintiff's Fifth Amendment liberty interest to be free

from age discrimination.  In the second element, statements made by Defendant Miller et al, urging other constituents to adopt unlawful legislation were directly attributable to Plaintiff's deprivation.  And, in the third element, it is likely that a favorable decision will redress the injury.

10. **Intradistrict Assignment**.  This lawsuit should be assigned to the Eastern District of California because a substantial part of the events or omissions which give rise to this lawsuit occurred in the District of Columbia.

11. Plaintiff is an individual, 65 year-old African American, disabled American veteran with a 100% service-connected disability rating; a Purple Heart recipient, receiving medical benefits as set forth in 38 C.F.R. § 17.38, and at all times herein mentioned was a resident of Corpus Christi, Texas.  *[TAB 1]*

12. Plaintiff is informed and believes and on that basis alleges that aforementioned named Defendants are agents of the Federal government located in the District of Columbia; and that Defendants are officers of the United States Congress.

13. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned each of the Defendants was an agent and employees of Congress, operating within the scope of their employment, but outside the sphere protected by the Speech or Debate clause.

14. *There are no alternative remedies available to Plaintiff for Defendants' wrongful and unconstitutional actions.*

## FIRST CAUSE OF ACTION

**(Bivens claim of Conspiracy to Deprive Plaintiff's Liberty Interest to be Free From Age discrimination; and Neglect to Prevent Conspiracy against *Miller, et al* (Bivens, 42 U.S.C. §§ 1985(3), and 1986)**

15. Plaintiff herein hereby refers to paragraphs 1 through 14 and each of them and incorporates same herein as though fully realleged.

**16.** Plaintiff alleges that Defendants *Miller et al*, outside the sphere of legitimate legislative activity, made statements to solicit, persuade, and influence other constituents to enact unlawful legislation, which deprived Plaintiff's Fifth Amendment liberty interest to be free from age discrimination. Defendants *Miller et al* made statements, through press releases and newsletters, urging other constituents to adopt unlawful legislation, which together, deprived Plaintiff's Fifth Amendment liberty interest to be free from age discrimination.   Under Title 38 C.F.R. § 18.511 (a-b)(1-2)(c), veterans are supposed to be legally protected from age discrimination; they are, in the language of the law, a "protected class." At the time of these statements, Defendants *Miller et al* knew or should have known that Plaintiff would be adversely affected by these statements. Moreover, at the time of these statements, Defendants *Miller et al* knew, or should have known, that their conduct would deprive Plaintiff's already established constitutional rights to due process through age discrimination. Because Defendants *Miller et al* knew that these statements would adversely affect Plaintiff, the decision to state them, outside the sphere of legitimate legislative activities, constitutes a deprivation – an infringement upon Plaintiff's liberty interest to be free from age discrimination.

**17. NOTE**:  Before enactment of the Vow to Hire Heroes Act (not scheduled for voting until **November 10, 2011**), the following Representatives co-sponsored Rep. Miller's H.R. 2433: (**i.e., an overt act in furtherance of conspiracy**)

**18.** On **July 8, 2011**, Rep. Bill Flores (R-TX) co-sponsored the H.R. 2433.

**19.** On **July 11, 2011**, in his eNewsletter, at *bilirakis.house.gov/index.php?option=com_content&view=article&id=4172:gus-co-sponsors-veteran-opportunity-to-work-vow-act&catid=29&Itemid=42*, Rep. Gus Bilirakis (R-FL), stated that he co-sponsored the H.R. 2433.

**20.** On **July 12, 2011**, Rep. Michael Grimm (R-NY) co-sponsored the H.R. 2433.

**21.** On **July 12, 2011**, Rep. Richard Hanna (R-NY) co-sponsored the H.R. 2433.

**22.** On **July 12, 2011**, Rep. John Mica (R-FL) co-sponsored the H.R. 2433.

**23.** On **July 12, 2011**, Rep. John Runyan (R-NJ co-sponsored the H.R. 2433.

**24.** On **July 14, 2011**, Rep. Dan Benishek (R-MI) co-sponsored the H.R. 2433.

**25.** On **July 14, 2011**, Rep. Jeff Denham (R-CA) co-sponsored the H.R. 2433.

**26.** On **July 14, 2011**, Rep. Phil Roe (R-TN) co-sponsored the H.R. 2433.

**27.** On **July 20, 2011**, Rep. Martha Roby (R-AL) co-sponsored the H.R. 2433.

**28.** On **August 1, 2011**, Rep. Tim Griffin (R-AR) co-sponsored the H.R. 2433.

**29.** On **September 7, 2011**, Rep. Diane Black (R-TN) co-sponsored the H.R. 2433.

**30.** On **September 7, 2011**, Rep. Ken Calvert (R-CA) co-sponsored the H.R. 2433.

**31.** On **September 7, 2011**, Rep.Michael Fitzpatrick (R-PA) co-sponsored the H.R. 2433.

**32.** On **September 7, 2011**, Rep. Dana Rohrabacher (R-CA) co-sponsored the H.R. 2433.

33. On *September 7, 2011*, Rep. Lamar Smith (R-TX) co-sponsored the H.R. 2433.

34. On *September 15, 2011*, Rep. Frank Guinta (R-NH) co-sponsored the H.R. 2433.

35. On *September 15, 2011*, Rep. Kristi Noem (R-SD) co-sponsored the H.R. 2433.

36. On *September 20, 2011*, Rep. Bill Johnson (R-OH) co-sponsored the H.R. 2433.

37. On *September 21, 2011*, Rep. Cliff Stearns (R-FL) co-sponsored the H.R. 2433.

38. On *September 23, 2011*, Rep. Jo Bonner (R-AL) co-sponsored the H.R. 2433.

39. On *September 23, 2011*, Rep. Doug Lamborn (R-CO) co-sponsored the H.R. 2433.

40. On *September 23, 2011*, Rep. Frank LoBiondo (R-NJ) co-sponsored the H.R. 2433.

41. On *October 11, 2011*, Rep. Ann Marie Buerkle (R-NY) co-sponsored the H.R. 2433.

42. On *October 11, 2011*, Rep. Richard Nugent (R-FL) co-sponsored the H.R. 2433.

43. On *October 11, 2011*, Rep. Scott E. Rigell (R-VA) co-sponsored the H.R. 2433.

44. **NOTE**:  Before enactment of the Vow to Hire Heroes Act (not scheduled for voting until *November 10, 2011*), Rep. Miller, Sen. Murray, Fang A. Fong, Sen. Stabenow, Sen. Sherrod Brown, and Sen. Jon Tester made the following statements:

45. On **July 15, 2011**, in a newsletter called The Hill's Congress Blog (**http://thehill.com/blogs/congress-blog/economy-a-budget/171685-vowing-to-act-for-veterans**), Defendant Rep. Miller (R-FL) stated, *"60,000 veterans were added to the unemployment rolls in June.  That brought the total number of*

E. K. Wade v. Miller et al: Complaint for Damages - 17

*America's out-of-work veterans to more than 1 million – a staggering figure. That is why I have introduced the Veterans Opportunity to Work Act of 2011 (H.R. 2433), or the VOW Act."* **[The Plan]** *[TAB 2]*

46. On **July 15, 2011**, in a press release entitled Miller Introduces Milestone Veteran Employment Legislation, **Rep. Jeff Miller** stated: "In today's economic environment, finding meaningful employment is difficult, and it's no different if you are a veteran.  We must come together as a nation to keep our promise to those who have protected not only our Liberty, but the American way of life.  It is our duty to welcome these men and women back into society and match their skills with jobs.   ...We must address our economic problems, while ensuring veterans have the hard skills that will be in demand as the economy recovers." *[TAB 2]*

47. On **October 12, 2011**, the House of Representatives, influenced by Rep. Miller and co-sponsors, voted **H.R. 2433** (418 yeas) (*i.e., an overt act in furtherance of conspiracy*). The Vow Act's criteria mandate that veterans under age 35 and over 60 should be excluded from participating in additional veterans' benefits for the purpose of gaining education and employment. "Eligibility. – For purposes of this section, an eligible veteran is a veteran who – **(1)** is at least 35 years of age but not more than 60 years of age; **(2)** was discharged from active duty service in the Armed Forces with an honorable discharge; **(3)** as of the date of the submittal of the application for assistance under this section, has been unemployed for a period of time determined by the Secretary, with special consideration given to veterans who have been unemployed for at least 26 continuous weeks; **(4)** is not eligible to apply for educational assistance under chapter 30, 31, 33, or 35 of title

38, United States Code; and **(5)** by not later than October 1, 2013, submits to the Secretary of Labor an application containing such information and assurances as the Secretary may require." *H.R. 2433 § 101(e)(1-5)* [*The age animus in the Act*] *[TAB 3]*

48. In the Lone Star Paralyzed Veterans of America, *Fall Issue 2011*, (mypva.org/images/fall_2011_pva.pdf), **Rep. Jeff Miller** issued the following statement: *"I am delighted that President Obama is willing to join forces with Congress to stem veteran unemployment.  One of my top priorities as Chairman of the House Committee on Veterans' Affairs has been ensuring that America's veterans can find meaningful employment when they return home.   …In May (2011), I made a commitment to challenge America to institute policies and programs that will reduce veteran unemployment to less than 5% over the next two years. The first step I have taken toward that goal is the Veterans Opportunity to Work Act of 2011 (H.R. 2433), the VOW Act.  I am proud that this bill has garnered the support of dozens of Veterans and Military Service Organizations.  …I call on all Americans to help us in this effort.  This must be our sacred obligation to all who have served." [TAB 4]*

49. *"*On **October 14, 2011**, in a newsletter entitled FROM WASHINGTON NEWS FOR THE ENLISTED, Defendant **Rep. Jeff Miller (R-FL)** stated, *"The House of Representatives sent a clear message that not only is support for our veterans strong, but that we stand together to end veteran unemployment. The VOW Act is the most comprehensive, thoughtful legislation that has been introduced to get our veterans out of unemployment lines and into meaningful jobs.  We must also*

get government out of the way and ensure we have the right environment for the job market to flourish once again for all Americans." Then, **Sen. Patty Murray (D-WA)** stated, "I look forward to working with Chairman Miller to build around both of our efforts to start putting veterans to work. This is an issue that should transcend partisanship and remind us that doing right by our veterans always comes first. We have made tremendous investments in training and supporting those in uniform and simply patting them on the back for their service and sending them into the working world alone isn't good enough. We must improve the opportunities and resources available to our veterans to help them find the dignity and financial security that a job helps provide." [**Agreement – (expressed/implied) to deprive Plaintiff's Fifth Amendment rights because of his age]** *[TAB 5]*

50. On **November 4, 2011**, in a news release, entitled EON – Enhanced Online News, with a subject heading: <u>Legion Commander to Congress: Pass a Jobs Bill for Veterans</u>, **Fang A. Wong**, American Legion National Commander, corroborated Defendants' Miller's and Murray's agreement to deprive Plaintiff by stating "During my testimony, both Chairman Murray and Chairman Miller pledged to me they'd work together to meet that goal." [**Independent, external evidence corroborating the expressed/implied agreement to deprive Plaintiff because of his age]** *[TAB 6]*

51. On **November 4, 2011**, in a press release to Politico.com, while standing before multiple Democratic Senators, **Sen. Debbie Stabenow (D-MI)** (Co-sponsor) stated the veterans bill "is bipartisan. We expect it to pass. It should pass. It will

make sure veterans are not standing in the back of the unemployment line.  It is important we support our troops, not by lip service but by action.  And, we intend to act next week." *[Overt act (expressed/implied) of manifested intent in furtherance of the agreement]* *[TAB 7]*

52. On **November 4, 2011**, in a newsletter, entitled Senate Democrats Announce Bill to Put America's Veterans Back to Work, on the website: http://democrats.senate.gov/2011/11/04/senate-democrats-announce-bill-to-put-veterans-back-to-work/ *Defendant Sen. Sherrod Brown* stated, "Our commitment to our service members shouldn't end when they return home as skilled, experienced civilians.  Today, the unemployment rate for young veterans is 27 percent – which is simply unacceptable.  That means more than one in four of these young veterans can't find a job to support their family or to ease the transition to civilian life.  Our veterans' service to our country does not stop when they leave the military.  From leadership experience to technical and scientific skills, veterans are key to our nation's economic competitiveness." *[Overt act (expressed/implied) of manifested intent in furtherance of the agreement]*

53. On **November 4, 2011**, in an newsletter, entitled Senate Democrats Announce Bill to Put America's Veterans Back to Work, on the website: http://democrats.senate.gov/2011/11/04/senate-democrats-announce-bill-to-put-veterans-back-to-work/ *Defendant Sen. Jon Tester* stated, "It's unacceptable that veterans returning from Iraq and Afghanistan have a higher unemployment rate than the rest of America, and we owe them better than that.  We have a responsibility to empower all veterans with the tools they need to find good-

paying jobs.  And this *plan* incorporates bipartisan ideas to ease the transition

between military service and the civilian workforce."  [*Overt act*

*(expressed/implied) of manifested intent in furtherance of the agreement*]

54. On **November 4, 2011,** in a newsletter from www.democrats.senate.gov, entitled

"Senate Democrats Announce Bill to Put America's Veterans Back to Work,

Senator Stabenow stated, "When we say 'support our troops' that can't just be

lip-service, we must support them through action.  Congress shouldn't just pass a

resolution honoring Veterans Day next week; it needs to take real action to help

America's one million unemployed veterans get back to work."  Senators Patty

Murray (D-WA), Debbie Stabenow (D-MI), Sherrod Brown (D-OH), Jon Tester (D-

MT), and Max Baucus (D-MT) unveiled the "Vow to Hire Heroes Act."  In the

same news release, GOP Senators Murkowski (R-AK), Hutchison (R-TX), Enzi

((R-WY), Johanns (R-NE), Grassley (R-IA), and Boozman (R-AR) chimed in their

overall support for passage of the Act, which was pending for *November 10,*

*2012.* [*Overt act (expressed/implied) of manifested intent in furtherance of*

*the agreement*] *[TAB 4]*

55. On **November 8, 2011,** in a press release from www.wotcplanet.com, entitled

"State Republicans Now Backing VOW to Hire Heroes Act,  reporter Vaughn

Hromiko wrote: "Republican Senate Minority Leader Mitch McConnell told the

Senate this morning that he would be voting FOR the VOW to Hire Heroes Act of

2011, giving the nod for other Senate Republicans to support the measure."

*[TAB 5]*

*56.* On **November 10, 2011**, the U.S. Senate voted (95-0) **H.R. 674** (Vow to Hire Heroes Act), which combined the Act with the Hiring Our Heroes Act – S.951. *(i.e., an overt act in furtherance of conspiracy)*

57. On **November 11, 2011**, President Barack Obama signed into law the **Vow To Hire Heroes Act** (H.R. 674) [combining The Vow Act – HR 2433 (Rep. Miller), The Hiring Our Heroes Act – S.951 (Sen. Murray), and President Obama's American Jobs Act.] Defendants *Miller et al* (Senators) voted 95-0 to enact the legislation. *[TAB 8]*

58. In a nutshell, Defendants Miller et al, outside the sphere of legitimate legislative activity, made statements, urging constituents to adopt unlawful legislation, which, deprived Plaintiff's Fifth Amendment rights in violation of 42 U.S.C. §§ 1985(3).

59. On **May 15, 2012**, Plaintiff applied for admissions to Del Mar College, in Corpus Christi, Texas, to obtain an Associate's Degree in Criminal Justice, with aspirations of supervising First Line Correctional Officers – as part of the requirements for eligibility to participate in the Veterans Retraining and Assistance Program (VRAP). *[TAB 9]*

60. On **May 22, 2012**, Plaintiff enrolled in Juvenile Justice (CRIJ – 1313) and Police Systems and Practices (CRIJ – 2328) classes, scheduled to begin on July 9, 2012, respectively. *[TAB 10]*

61. On **May 22, 2012**, Plaintiff filed an online Joint DOL/VA application for the Veterans Retraining and Assistance Program (VRAP) (VA Form 1990R). *[TAB 11]*

62. On **May 22, 2012**, Plaintiff submitted the above-mentioned application for DOL approval. Upon submittal of the VA Form 1990R, Plaintiff received a letter (in PDF format) from DOL, stating, *"Based upon the information provided on your application, the Department of Labor has determined that you are not eligible to participate in the Veterans Retraining and Assistance Program (VRAP). You have not met the following criteria for the VRAP: The applicant must be at least 35 years old and not older than 60 at the time of application. If the Department of Labor determines the applicant is eligible for assistance under these factors, the application is forwarded to the Department of Veterans Affairs for its own eligibility determination according to additional criteria. (See the VOW to Hire Heroes Act of 2011, Title II of Public Law 112-56, section 211(e). However, based on the information your application provided regarding the above four factors, the Department of Labor has determined that you are not eligible for the VRAP."* [**TAB 12**]

63. On **May 23, 2012**, Plaintiff, anguished, humiliated, degraded, frightened, frustrated, severely disappointed, embarrassed, and shamefully locked out, and distressed, immediately checked into the VA Outpatient Clinic, in Corpus Christi, Texas, for psychiatric counseling and medication to calm his fears and anxiety, brought on by actions of the aforementioned named Defendants. [**TAB 13**]

64. In a nutshell, Defendants *Miller et al*, outside of the sphere of their legislative activity – unprotected by the Speech or Debate clause, made statements, which was the moving force (fuel) that adversely caused Plaintiff's constitutional injury. In sum, the aforementioned conspiratorial and overt acts (statements and votes)

caused Plaintiff's constitutional injury in contravention of the Fifth Amendment due process to be free from age discrimination, when Defendants knew or should have known that their statements would cause Plaintiff injury.

*65.* "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." *U.S. Const. amend. V*

66. "If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set

forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators." *42 U.S.C. § 1985(3)*

67. In the District of Columbia, A civil conspiracy has four elements: "1) an agreement between two or more persons; 2) to participate in an unlawful act, or a lawful act in an unlawful manner; 3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; 4) which overt act was done pursuant to and in furtherance of the common scheme." *Halberstam v. Welch, 705 F.2d 472, 477 (D.C. Cir. 1983)*

68. To state a claim under Bivens, a plaintiff must show: **1)** a deprivation of a right secured by the Constitution and laws of the United States; and **2)** that the deprivation of the right was caused by an official acting under color of federal law. *Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 155-56 (1978)*

69. "Anyone who 'causes' any citizen to be subjected to a constitutional deprivation is also liable.  The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Beverly v. Morris, 470 F.2d 1356 (5th Cir. 1972)*

**70.** "Section 1985 prohibits conspiracies to deprive a person or a class of persons of their constitutional rights.  Section 1985(3) requires allegations of racial or some other type of invidious, class-based discrimination in violation of the equal protection of the laws or equal privileges or immunities under the law.  In order to state a claim under sec. 1985(3), a plaintiff must allege: **1)** there was a conspiracy; **2)** the conspiracy was for the purpose of violating plaintiff's constitutional rights; **3)** an act occurred in furtherance of the conspiracy; and **4)** the plaintiff was injured or deprived of his rights." *United Brotherhood of Carpenters & Joiners of America, Local 610 v. Scott, 463 U.S. 825 (1983)*

**71.** "A Bivens claim can be based on conspiracy of federal agents by showing: **1)** the existence of an express or implied agreement among the defendants to deprive someone of constitutional rights, and **2)** an actual deprivation of those constitutional rights resulting from the agreement." *Scherer, Jr. v. Balkema, 840 F.2d 437 (7ᵗʰ Cir. 1988)*

72. "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the Vow Action; and if the death of any party be caused by any such wrongful

act and neglect, the legal representatives of the deceased shall have such action

there for, and my recover not exceeding $5,000 damages therein, for the benefit

of the widow of the deceased, if there be one, and if there be no widow, then for

the benefit of the next of kin of the deceased.  But no action under the provisions

of this section shall be sustained which is not commenced within one year after

the cause of action has accrued." *42 U.S.C. § 1986*

73. Negligence requires "…proof of a duty of care, breach of that duty, and injury

proximately caused by that breach." *Haynesworth v. D.H. Stevens Co., 645 A.2d*

*1095, 1098 (D.C. Cir. 1994)*

74. "(a) Underline General rule.  No person in the United States shall, on the basis of age, be

excluded from participation in, be denied the benefits of, or be subjected to

discrimination under any program or activity receiving Federal financial

assistance.  (b) Specific rules.  A recipient may not, in any program or activity

receiving federal assistance, directly through contractual licensing, or other

arrangements, using age distinctions or take any other actions which have the

effect, on the base of age, of: (1) excluding individuals from, denying them

benefits of, or subjecting them to discrimination under, a program or activity

receiving Federal financial assistance; or (2) denying or limiting individuals in

their opportunity to participate in any program or activity receiving Federal

financial assistance.  (c) The specific forms of age discrimination listed in

paragraph (b) of this section do not necessarily constitute a complete list."

**38 C.F.R. § 18.511(a-b)(1-2)(c)**

75. "Age discrimination means unlawful treatment based on age." **38 C.F.R. § 18.503**

**76.** "To satisfy the requirement of authentication or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." ***Fed.R.Evid. § 901(a)***

**77.** "Evidence that: **(A)** a document was recorded or filed in a public office as authorized by law; or **(B)** a purported public record or statement is from the office where items of this kind are kept." ***Fed.R.Evid. § 901(b)(7)(A-B)***

**78.** "The following items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted: **Official Publications.**  A book, pamphlets, or other publications purporting to be issued by a public authority." ***Fed.R.Evid. § 902(5)***

**79.** ""The following items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted: (6) Newspapers and Periodicals. ***Fed.Rul.Evid. § 902(6)***   Printed material purporting to be a newspaper or periodical." ***Fed.Rul.Evid. § 101(b)(6)***

**80.** "**Definitions That Apply to This Article; Exclusions from Hearsay (d)** ***Statements That Are Not Hearsay***.  A statement that meets the following conditions is not hearsay: **(2)** ***An Opposing Party's Statement***.  The statement is offered against an opposing party and: **(E)** was made by the party's coconspirator during and in furtherance of the conspiracy.***"  Fed.Rul.Evid. 801 §*** ***(d((2)(E)***

81. Plaintiff, in this action, is a citizen of the United States and all of the individual Defendants to this claim are persons for purposes of Bivens.

82. All individual Defendants to this claim, at all times relevant hereto, were acting under color of Federal law in the scope of their employment as Representatives/Senators; and their acts or omissions were conducted outside of the sphere of legitimate legislative activity.

83. At the time of the complained of events, Plaintiff had a clearly established constitutional right under the Fifth Amendment to not be deprived of his due process rights; and Title 38 protects Plaintiff from being discriminated against based upon his age.

84. Any reasonable public official knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

85. Defendants' *Miller et al* actions, as described herein, were objectively unreasonable in light of the facts and circumstances confronting them and violated the Plaintiff's Fifth Amendment rights to due process.

86. Defendants' *Miller et al* actions, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Plaintiff's federally protected rights. The conduct, perpetrated by these Defendants, shocks the conscience and violated Plaintiff's Fifth Amendment rights.

87. The conduct, perpetrated by Defendants *Miller et al* caused Plaintiff serious psychological, physical, and emotional injuries.

88. Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Plaintiff's already established federally protected constitutional rights; they did so with shocking

and willful indifference to Plaintiff's rights and their conscious awareness that
they would cause Plaintiff severe emotional injuries.

89. The statements, made by all individual Defendants, were the moving forces
behind Plaintiff's injuries.

90. These individual Defendants acted in concert and joint action with each other.

91. The statements made by all Defendants, as described herein, deprived Plaintiff
of his constitutional rights and caused him other damages.

92. These individual defendants **ARE NOT** entitled to either legislative or qualified
immunity for the complained of conduct.

93. As a proximate result of Defendants' unlawful conduct, Plaintiff has suffered
emotional injuries, and other damages and losses as described herein entitling
him to compensatory and special damages, in amounts to be determined at trial.
As a further result of Defendants' unlawful conduct, Plaintiff has incurred special
damages, including medically-related expenses (future); and may continue to
incur further medical and other special damage-related expenses, in amounts to
be determined at trial.

94. In addition to compensatory, economic, consequential and special damages,
Plaintiff is entitled to punitive damages against each of the individually named
Defendants under *Bivens*, 42 U.S.C. §§ 1985(3), in that the actions of each of
these individual Defendants have been taken maliciously, willfully or with a
reckless or wanton disregard of the constitutional rights of Plaintiff.

95. Whether Plaintiff's complaint contained sufficient facts plausibly showing that
officials purposefully adopted policy of so classifying detainees because of their

race stated a claim for purposeful and unlawful discrimination was mentioned in *Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009)*.  "Following the September 11, 2001 terrorist attacks, respondent Iqbal, a Pakistani Muslim, was arrested on criminal charges and detained by federal officials under restrictive covenants.  Iqbal filed a Bivens action against numerous federal officials, including petitioner Ashcroft, the former Attorney General, and petitioner Mueller, the Director of the Federal Bureau of Investigation (FBI). *Id at 1939*  "…The complaint alleged, inter alia, that petitioners designated Iqbal a person 'of interest' on account of his race, religion, and national origin, in contravention of the First and Fifth Amendments; that the FBI, under Mueller's direction, arrested and detained thousands of Arab Muslim men as part of its September eleventh investigation; that petitioners knew of, condoned, and willfully and maliciously agreed to subject Iqbal to harsh conditions of confinement as a matter of policy, solely on account of the prohibited factors and for no legitimate penological interest; and that Ashcroft was the policy's 'principal architect' and Mueller was 'instrumental' in its adoption and execution. *Id at 1939*  The District Court denied petitioners' motion to dismiss on qualified immunity grounds; and petitioners appealed to the Second Circuit Court of Appeals, which affirmed without discussion, focusing upon the standards set forth in *Bell Atlantic Corp. v. Twombly, 550 U.S. 544*, for evaluating whether a complaint is sufficient to survive a motion to dismiss.  "Concluding that Twombly's 'flexible plausibility standard" obliging a pleader to amplify a claim with factual allegations where necessary to render it plausible was inapplicable in the context of petitioners' appeal, the court held that Iqbal's complaint was adequate

to allege petitioners' personal involvement in discriminatory decisions which, if

true, violated clearly established constitutional law.  Held: The Second Circuit

had jurisdiction to affirm the District Court's order denying petitioners' motion to

dismiss.  Pp. 1944-1947" *Id at 1939-40*  On appeal, the Supreme Court reversed

and remanded the case, reasoning that "Purposeful discrimination requires more

than 'intent as volition or intent as awareness of consequences,'; it involves a

decision-maker's undertaking a course of action 'because of,' not merely 'in spite

of,' [the action's] adverse effects upon an identifiable group.'  Iqbal must plead

sufficient factual matter to show that petitioners adopted and implemented the

detention policies at issue not for a neutral, investigating reason, but for the

purpose of discriminating on account of race, religion, or national origin."  *Id at*

*1940*  The Supreme Court, relying upon *Federal Rule of Civil Procedure 8(a)(2)*

and *Twombly* stated, "A claim has facial plausibility when the pleaded factual

content allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged.  ...A court considering a motion to dismiss may

begin by identifying allegations that, because they are mere conclusions, are not

entitled to the assumption of truth.  When there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether

they plausibly give rise to an entitlement to relief.  ...His claims against

petitioners rest solely on their ostensible policy of holding detainees categorized

as 'of high interest,' but the complaint does not contain facts plausibly showing

that their policy was based on discriminatory factors.  ...And because Iqbal's

complaint is deficient under Rule 8, he is not entitled to discovery, cabined or

otherwise.'" *Id at 1940-41*     This case is on point and extremely helpful to Plaintiff's cause, although Iqbal's case was reversed.  In the case at bar, Plaintiff has presented factual, plausible content to show that Defendants *Miller et al* (outside of the sphere of legitimate legislative activity), made statements "aimed at interfering with rights" that are "protected against private, as well as official, encroachment," a second prerequisite to proving a private conspiracy in violation of 1985(3)'s first clause.   As a result, this Court should assume the veracity of Plaintiff's pleadings to survive any motion to dismiss these claims.  Plaintiff has now pleaded sufficient factual matter to show that Defendants *Miller et al* deprived Plaintiff of his Fifth Amendment liberty interests to be free of age discrimination.

96. Whether violations of the Constitution afford a right of civil remedy against Federal officers, in their individual capacities, was mentioned in <u>Bivens v. Six Unknown Narcotics Agents</u>, *403 U.S. 388 (1971)*.  Bivens alleged that six employees of the U.S. Department of Justice had arrested him and searched his home without a warrant or probable cause in violation of the 4th Amendment's ban against unreasonable searches and seizures.  The Supreme Court upheld the reasonableness of the complaint in the face of a motion to dismiss for failure to state a cause of action.  They rejected the argument that a State Tort action provided an adequate and exclusive judicial remedy.  The Court further reasoned that a monetary damage for Bivens, injured by Federal officials and agents was a means to compensate and vindicate Bivens' claim. This case is on point and extremely helpful to Plaintiff's cause, for Defendants *Miller et al*, acting under

E. K. Wade v. Miller et al: Complaint for Damages - 34

color of Federal law, made statements to solicit, persuade, influence, and urge other constituents to enact of unlawful legislation "aimed at interfering with rights" that are "protected against private, as well as official, encroachment," a second prerequisite to proving a private conspiracy in violation of 1985(3)'s first clause. These statements, (made outside of the sphere of legitimate legislative activity) were the moving force and cause-in-fact behind the deprivation of Plaintiff's already established Fifth Amendment rights. Hence, as in *Bivens*, money damages for Plaintiff, injured by Federal officials and agents, should be a means to compensate and vindicate Plaintiff's claims.

97. Whether a cause of action and a damages remedy can also be implied directly under the Constitution when the Due Process Clause of the Fifth Amendment is violated was mentioned in <u>*Davis v. Passman, 99 S.Ct. 2264 (1979).*</u>  On February 1, 1974, Louisiana Congressman Otto Passman hired Shirley Davis as a deputy administrative assistant.  Passman subsequently terminated her employment, effective July 31, 1974, writing Davis that, although she was "...able, energetic, and a very hard worker," he concluded "that it was essential that the understudy to my Administrative Assistant be a man."  Davis sued Passman, alleging that Passman's conduct discriminated against her "on the basis of sex in violation of the United States Constitution and the Fifth Amendment thereto."   *Id at 2269*   The District Court ruled that Davis had "no private right of action" for her claim.  A panel of the Court of Appeals for the Fifth Circuit reversed.  *544 F.2d 865 (1977)*   The panel concluded that a cause of action for damages arose directly under the Fifth Amendment; that, taking as true

the allegations in Davis' complaint, Passman's conduct was not shielded by the

Speech or Debate Clause of the Constitution, Art. I, § 6 cl. 1.  The Court of

Appeals for the Fifth Circuit, sitting en banc, reversed the decision of the panel.

The en banc court did not reach the merits, not did it discuss the application of

the Speech or Debate Clause.  The Supreme Court, relying heavily upon *Bivens*,

reasoned: "*First*, a damages remedy is surely appropriate in this case.

'Historically, damages have been regarded as the ordinary remedy for an

invasion of personal interests in liberty.' *Bivens, supra, at 395, 91 S.Ct., at 2004.*

*Second*, although a suit against a Congressman for putatively unconstitutional

actions taken in the course of his official conduct does raise special concerns

counseling hesitation, we hold that these concerns are coextensive with the

protections afforded by the Speech or Debate Clause.  If respondent's actions

are not shielded by the Clause, we apply the principle that 'legislators ought ....

generally to be bound by [the law] as are ordinary persons. ...No man in this

country is so high that he is above the law.  No officer of the law may set that law

at defiance with impunity.  All officers of the government, from the highest to the

lowest, are creatures of the law, and are bound to obey it.  *United States v. Lee,*

*106 U.S. [196] 220 (1882)  Id at 2277   Third*, there is in this case 'no explicit

congressional declaration that persons' in petitioner's position injured by

unconstitutional federal employment discrimination 'may not recover money

damages from' those responsible for the injury.  *Bivens, supra, 403 U.S., at 397*

*Id at 2278*  "...We hold today that the Court of Appeals for the Fifth Circuit, en

banc, must be reversed because petitioner has a cause of action under the Fifth

E. K. Wade v. Miller et al: Complaint for Damages - 36

Amendment, and because her injury may be redressed by a damages remedy.
…The judgment of the Court of Appeals is reversed and the case is remanded
for further proceedings consistent with this opinion." *Id at 2279*   This case is on
point and extremely helpful to Plaintiff's cause, for Defendants *Miller et al*, acting
under color of Federal law, made statements, urging other constituents to enact
unlawful legislation, which violated Plaintiff's Fifth Amendment liberty interests;
and that a damage remedy provides a ready mechanism for remedial action.
Moreover, the equal protection component of the Fifth Amendment's Due
Process Clause confers on Plaintiff a federal constitutional right to be free from
age discrimination.

98. "Whether an act is legislative turns on the nature of the act, rather than on the
motive or intent of the official performing it." *Bogan v. Scott-Harris, 118 S.Ct.
966, 973 (1998)*

99. "The doctrine of absolute immunity, as it pertains to local legislators, does not
shield executive officials from liability for a course of conduct taken prior to and
independent of legislative action, even if those officials were simultaneously
members of the local legislative body that ratified the conduct." *Carver v.
Foerster, 102 F.3d 96, 102 (3rd Cir. 1996)*

100.      Whether the Speech or Debate Clauses protects legislators from speech
transmitted via newsletters and press releases was mentioned in *Hutchinson v.
Proxmire, 99 S.Ct. 2675 (1979)*. Professor Ronald Hutchinson was a research
director and professor who had received federal funding for animal studies.
Senator William Proxmire gave a "Golden Fleece Awards" speech to the

agencies that funded the professor's research, in a newsletter that was sent to about 100,000 people.  In the speech, Proxmire described the general grants for Hutchinson's research, concluding with the following comment: "The funding of this nonsense makes me almost angry enough to scream and kick or even clench my jaw.  It seems to me it is outrageous."  *Id at 2678*  Hutchinson sued Proxmire for defamation.  The U.S. District Court granted summary judgment for Proxmire and his legislative assistant.  And, the U.S. Court of Appeals (*579 F.2d 1027 (7th Cir.*) affirmed.  The U.S. Supreme Court, relying upon <u>Doe v. McMillan</u>, *93 S.Ct. at 2025-2026 (1973),* stated "A Member of Congress may not with impunity publish a libel from the speaker's stand in his home district, and clearly the Speech or Debate Clause would not protect such an act even though the libel was read from an official committee report.  The reason is that republishing a libel under such circumstances is not an essential part of the legislative process and is not part of that deliberate process 'by which Members participate in committee and House proceedings.'"  *Id at 2685-2686*   Chief Justice Warren Burger reversed and remanded this case, making it plain that "Valuable and desirable as it may be in broad terms, the transmittal of such information by individual Members in order to inform the public and other Members is not a part of the legislative function or the deliberations that make up the legislative process.  As a result, transmittal of such information by press releases and newsletters is not protected by the Speech or Debate Clause."  *Id at 2687*

This case is on point and extremely helpful to Plaintiff, for, Defendants *Miller et al* made statements, which was the moving force behind Plaintiff's deprivation.

As in Proxmire, "The heart of the clause is speech or debate in either house, the court said.  Insofar as the clause is construed to reach other matters, they must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with the respect to consideration and passage or rejection of proposed legislation or with respect to other matters  which the Constitution places within the jurisdiction of either house.  … A speech by Proxmire, in the Senate, would be wholly immune and would be available to other members of Congress and the public in the Congressional Record.  But neither the newsletter nor press release was essential to the deliberations of the Senate and neither was it part of the deliberative process."  Since Miller et al made statements that were neither a legislative function nor the deliberations that make up the legislative process, then the transmittal of these statements are not protected by the Speech or Debate Clause.  Hence, as in Proxmire and McMillan, Defendants *Miller et al* should not be entitled to legislative immunity.

101.    Whether legislative voting by co-conspirators constitutes an overt act in furtherance of conspiracy was mentioned in <u>*Moxley v. Town of Walkersville*</u>, *Civil Action No. RDB 08-1763, U.S. District Court – District of Maryland (2009)*.  "The Government Defendants highlight that Plaintiff's Amended Complaint asserts no specific factual allegations against Commissioner Eyler or the members of the Board of Appeals (Defendants Thomas, Zimmerman, and Roderuck) involving membership in the conspiracy, other than the final, official "overt act" (i.e., voting on the Weddle Amendment and denying the special exception).  Therefore, the

Government defendants argue that dismissal is warranted as to Defendants Eyler, Thomas, Zimmerman, and Roderuck.  Particularized allegations against Defendants Eyler, Thomas, Zimmerman, and Roderuck in relation to the alleged conspiracy are scant.  However, it is alleged in the Amended Complaint that the conspiracy included the official actions taken by the Commissioners and the Board of Appeals.  The clandestine nature of the conspiracy charge also makes it extremely unlikely that Plaintiffs could plead specific facts as to each and every alleged conspirator. See, e.g., _Walker v. Butkovich_, 584 F. Supp. 909, 931 (M.D.N.C. 1984) ("Conspiracies are by their very nature secretive, and the victims thereof are unlikely to have access to such facts before bringing suit,") Instead, Plaintiffs have alleged an overarching conspiracy between the Private and Government Defendants, beginning at the October 13, 2007 meeting and developing throughout the pendency of the AMC's application.  At a minimum, Plaintiffs' argument is undergirded by Defendant Berryman's statement at the October 13, 2007 meeting that the Private Defendants had "connections" to the Burgess, the Commissioners, and the Appeals Board, which includes Defendants Eyler, Thomas, Zimmerman, and Roderuck.  Therefore, despite the lack of precise allegations, Plaintiffs' Amended Complaint, taken as a whole, alleges "enough facts to state a claim to relief that is plausible on its face." _Twombly_, 550 U.S. at 570.  Accordingly, the Government Defendants' Partial Motion to Dismiss as to Plaintiffs' claim under 42 U.S.C. § 1985(3) is DENIED."  This case is on point and extremely helpful to Plaintiff, for Plaintiff has presented precise allegations of a conspiracy, rife with 513 overt acts (voting), which is "all that is

required to complete of offense of conspiracy." *Quey v. U.S.*, *222 F. 766, 771-772 (9th Cir. 1915)*

102.     Whether Federal officers are granted qualified immunity from liability for civil damages, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, was mentioned in *Harlow v. Fitzgerald*, *102 S.Ct. 2727 (1982)*. Two former Senior Presidential aides and advisors, Bryce Harlow and Alexander Butterfield (Petitioners), were previously denied the use of immunity as a defense in a civil case. The case involved a suit brought by the current Respondent, A. Ernest Fitzgerald, in which he stated that the petitioners had entered into a conspiracy to terminate Respondent, in violation of Respondent's constitutional and statutory rights. "Respondent claims that Harlow joined the conspiracy in his role as the Presidential aide principally responsible for congressional relations. At the conclusion of discovery the supporting evidence was inferential. The other evidence most supportive of Fitzgerald's claims consists of a recorded conversation in which the President later voiced a tentative recollection that Harlow was 'all for canning' Fitzgerald. ...Harlow asserts he had no reason to believe that a conspiracy existed. He contends that he took all of his actions in good faith. *Id at 2730*  As evidence that Butterfield participated in the conspiracy to conceal his unlawful discharge and prevent his reemployment, Fitzgerald cites communications between Butterfield and Haldeman in December 1969 and January 1970. After the President had promised at a press conference to inquire into Fitzgerald's dismissal, Haldeman solicited Butterfield's

recommendations.  In a subsequent memorandum, emphasizing the importance of 'loyalty,' Butterfield counseled against offering Fitzgerald another job in the administration at that time.  …Together with their codefendant Richard Nixon, petitioners Harlow and Butterfield moved for summary judgment on February 12, 1980.  In denying the motion, the District Court upheld the legal sufficiency of Fitzgerald's Bivens claim under the First Amendment and his 'inferred' statutory causes of action under 5 U.S.C. § 7211.  The court found that genuine issues of disputed fact remained for resolution at trial.  It also ruled that petitioners were not entitled to absolute immunity.  Independently of former President Nixon, petitioners invoked the collateral order doctrine and appealed the denial of their immunity defense to the Court of Appeals.  The Court of Appeals dismissed the appeal without opinion. *Id at 2732*   Upon grant of certiorari The Supreme Court ruled that, among other considerations,   *"Referring both to the objective and subjective elements, we have held that qualified immunity would be defeated if an official 'knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury…"* *Id at 2737*  The Supreme Court further reiterated that, "On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred.  …If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Id at 2738* The Supreme

Court added, "We think it appropriate, however, to remand the case to the District Court for its consideration of this issue in light of this opinion.  Finally, Justice Brennan, with whom Justice Marshall, and Justice Blackmun join, concurred and stated, *"I agree with the substantive standard announced by the Court today, imposing liability when a public-official defendant 'knew or should have known' of the constitutional violative effect of his actions.'"  Id at 2739*   This case is on point and extremely helpful to Plaintiff's cause, for Defendants *Miller et al* made statements (via press releases and newsletters) to urge other constituents to enact lawful legislation, by unlawful means, which they knew, or should have known, would deprive Plaintiff's already established constitutional rights to due process through age discrimination.  As the Supreme Court reiterated, "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct."  Therefore, as in Harlow, Defendants Miller et al should not be entitled to qualified immunity.

103.     Whether evidence acquired from a government website constituted self-authenticating admissible evidence was mentioned in <u>Williams v. Long</u>, *585 F.Supp.2d 679 (2008)*.  "Employees, on behalf of themselves and others similarly situated, filed suit alleging their employer had failed to compensate them at minimum wage and provide overtime pay in violation of Fair Labor Standards Act (FLSA), as well as claims for violation of Baltimore's Wage and Hour Law and Maryland's Wage Payment and Collection Law.  Employer counterclaimed for breach of contract, breach of fiduciary duty, and invasion of privacy.  The District

E. K. Wade v. Miller et al: Complaint for Damages - 43

Court, J. Frederick Motz, J., *558 F.Supp.2d 601*, granted employees motion to dismiss counterclaim.  Employees moved to conditionally certify collective action. …The District Court, Paul W. Grimm, United States Magistrate Judge, held that: …2) exhibits in form of printed web pages from websites suggesting there were other claimants who might decide to join suit were self-authenticating…" *Id at* ***679***  The Court, relying upon: **a)** "*Hispanic Broadcasting Corp. v. Education Media Foundation, No. CV027134CAS (AJWX), 2003 WL 22867633 (C.D. Cal. Oct. 30, 2003)*, where the court noted how 'exhibits which consist of records from government websites, such as the FCC website, are self-authenticating.  See Fed.R.Evid. 902(1), (5).'" *Id at 687*   **b)** *Shell Oil Co. v. Franco, No. CV 03-8846 NM (PJWx), 2004 WL 5615656 (C.D.Cal. May 18, 2004*; and **c)** *U.S. EEOC v. E.I. DuPont de Nemours & Co., No. Cic.A. 03-165, 2004 WL 2347559 (E.D.La. Oct. 18, 2004)*, *Id at 688*   ruled that "First and foremost, the Maryland judiciary is a branch of the Maryland State Government; therefore, any online 'official publication' issued by the Maryland Judiciary would be self-authenticating.  Second, the URL on the top of the printed webpage identifies that the results are in fact from the website.  Third, the first page features a caption, stating, 'Maryland Judiciary Case Search Results,' and the next page states, 'District Court of Maryland.'  Accordingly, there is no doubt that these results were published on the website of a public authority.  Thus, they are self-authenticating." *Id at 689*   This case is on point and extremely helpful to Plaintiff's cause, for Plaintiff presented electronically stored information (ESI) from a webpage printout sufficiently authenticated where (1) printout contained

the addresses: http://veterans.house.gov/vow and

http://www.senate.gov/legislative/LIS/roll_call_lists/roll_call_vote_cfm.cfm?congr

ess=112&session=1&vote=00204 from which it was printed, (2) printout

contained the date on which it was printed, (3) court can access the website and

verify that the page exists, and (4) webpage was maintained by a government

agency and thus was self-authenticating pursuant to Fed.R.Evid. 902(5).  More

specifically, the above-mentioned websites chronicle Defendant *Miller et al's*

statements made, which deprived Plaintiff's Fifth Amendment rights to be free

from age discrimination.

104.      At the above-mentioned place and time, Defendants *Miller et al*, acting in

concert with one another, and by way of conspiracy among them, made

statements (outside legitimate legislative activity), which was the moving force

that deprived Plaintiff of due process to be free from age discrimination.

Furthermore, Defendants *Miller et al* have caused Plaintiff to be denied due

process of law, liberty interest, and to be deprived of equal privileges and

immunities under the laws, on account of Plaintiff's age, by subjecting him to

legally unjustified age discrimination.  *Finally, Defendants Miller et al had*

*knowledge of the conspiracy, had the power to prevent commission of the same,*

*but neglected or refused to do so in violation of 42 U.S.C. §1986.*

105.      As a proximate result of Defendants', and each of them, malicious

conduct, Plaintiff sustained emotional and psychological injuries to include

humiliation, and indignation, all of which have caused, and continue to cause

Plaintiff great mental anguish and suffering.

## FIRST CAUSE OF ACTION
**(Bivens claim of Conspiracy to Interfere/Deprive Plaintiff's Liberty Interest to Equal Protection (through Age discrimination) and Neglect to Prevent Conspiracy against *Miller et al* (Bivens, 42 U.S.C. §§ 1985(3), and 1986)**

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as follows:

1. **For general damages according to proof;**

2. **For pain and suffering (non-physical);**

3. **For punitive damages; and**

4. **For whatever relief the Court sees fit.**

Respectfully submitted.

Dated this 2nd day of May 2013

*E. K. Wade*

**E. K. Wade (Pro Se)**
**Attorney for Plaintiff**
**300 Bel Air Drive, #99**
**Vacaville, CA  95687**
**(925) 323-1578**

E. K. Wade v. Miller et al: Complaint for Damages - 46

## VERIFICATION

I, <u>E. K. Wade</u>, am the Plaintiff in the above-entitled action.  I have read the

foregoing complaint and know the contents thereof.  The same is true of my

own knowledge, except as to those matters, which are therein alleged on

information and belief, and as those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that

the foregoing is true and correct.

Dated this 2nd day of May 2013

E.K.Wade

**E. K. Wade (Pro Se)**
**Attorney for Plaintiff**
**300 Bel Air Drive, #99**
**Vacaville, CA  95687**
**(925) 323-1578**

E. K. Wade v. Miller et al: Complaint for Damages – 47